# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
JANE DOE,

                Plaintiff,

      -against-

UBER TECHNOLOGIES, INC.,

                Defendant.
-----------------------------------------------------------------------X

Index No.:

**SUMMONS**

**JURY TRIAL DEMANDED**

Plaintiff designates New York County as the place of trial. The basis of venue is the residence of the Defendant.

Defendant's address is 636 West 28th Street, New York, NY 10001

**TO THE ABOVE-NAMED DEFENDANT:**

*YOU ARE HEREBY SUMMONED* to answer the complaint in this action (the "Complaint") and to serve a copy of your response, or, if the Complaint is not served with this summons, to serve a notice of appearance on the plaintiff's attorney within 20 days after service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you for the relief demanded in the Complaint.

**Defendant's Address:**
Uber Technologies, Inc.
636 West 28th Street,
New York, NY 10001

Dated:  New York, New York
          September 28, 2020

                                        By:    /s/  William A. Brewer, III
                                                  William A. Brewer, III

                                                  **BREWER, ATTORNEYS & COUNSELORS**
                                                  750 Lexington Ave, 14th Floor
                                                  New York, New York 10022
                                                  wab@brewerattorneys.com
                                                  Telephone:  (212) 489-1400

                                                   **ATTORNEYS FOR PLAINTIFF**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------x
JANE DOE,                                                                :
                                                                         :
                               Plaintiff,  :   Index No.:
                                                                         :
              -against-                                           :
                                                                         :
UBER TECHNOLOGIES, INC.                                                  :   **COMPLAINT AND**
                                                                         :   **JURY DEMAND**
                              Defendant.  :
-------------------------------------------------------------------------x

To the Supreme Court of the State of New York:

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Dated: September 28, 2020

                Respectfully submitted,

                **BREWER, ATTORNEYS &
                COUNSELORS**

By:  */s/ William A. Brewer, III, Esq.*
       William A. Brewer, III, Esq.
       wab@brewerattorneys.com
       **BREWER, ATTORNEYS &
       COUNSELORS**
       750 Lexington Avenue, 14th Floor
       New York, New York 10022
       Telephone: (212) 489-1400
       Facsimile: (212) 751-2849

       **ATTORNEYS FOR JANE DOE**

FILED: NEW YORK COUNTY CLERK 09/28/2020 02:34 PM        INDEX NO. 158401/2020
NYSCEF DOC. NO. 1   Case 1:20-cv-08446-LJL   Document 1-1   Filed 10/09/20   Page 3 of 18   RECEIVED NYSCEF: 10/09/2020

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Jane Doe, by and through her undersigned attorneys at Brewer, Attorneys & Counselors, brings this action and hereby alleges as follows:

### I.
### PRELIMINARY STATEMENT

1. Uber connects riders with drivers it hires nationwide, including in New York. Although it disclaims—in fine print—any responsibility for the actions of its drivers, Uber heavily targets young, single women in its advertising with promises of a "safe" transportation. Although it constantly touts its safety, in reality Uber knows that its historically lax screening procedures for its drivers has resulted in thousands of women being sexually assaulted by Uber drivers. Uber also provided zero oversight of its drivers while riders were in their care. Uber knew that women who hired Uber to obtain a safe ride home were actually at risk.

2. Plaintiff relied on Uber's promise of safety and found herself the victim of a predatory driver who stopped along the designated route to her home from New York city and sexually assaulted her. Having failed to take reasonable steps to vet the driver before hiring him, Uber did nothing to ensure Plaintiff's safety, despite being aware that the driver had stopped along his prescribed route. As a result of Uber's gross negligence, Plaintiff suffered both physical and emotional trauma at the hands of the company and its driver. She continues to be affected to this day.

3. In order to ensure that Uber's gross and multiple failures to care for those who rely upon their promises of safety, Plaintiff brings this action and seeks compensatory and statutory damages as a result of Uber's gross negligence and deceptive business practices.

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**	Page 2

## II.
## JURISDICTION AND VENUE

4. The Court has subject-matter jurisdiction pursuant to N.Y. Const. Art. VI § 7.

5. The Court has personal jurisdiction over Defendant pursuant to CPLR § 302 because Defendant (i) transacted business within New York to supply services to Plaintiff from which the causes of action stated herein arise; (ii) committed a tortious act within the State; (iii) committed tortious acts within the State that caused injury to Plaintiff in this State; (iv) Defendant is authorized to and regularly conducts and solicits substantial business in New York; and (v) derives substantial revenue from services rendered in the State.

6. Venue is proper in this county pursuant to CPLR § 503 because Defendant is a foreign corporation authorized to do business in this state and its principal place of business in this State is in New York County.

## III.
## PARTIES

7. Plaintiff Jane Doe is an adult female who resides in Rye Brook, New York.

8. Defendant Uber Technologies, Inc. is a Delaware corporation with its principal place of business in San Francisco, California. It is registered to and does conduct business in the State of New York. Its principal New York office is located at 636 West 28th Street, New York, New York.

9. Non-party Iqbal Hussain is an adult male who resides in Queens County, New York. He is employed as a driver by Uber. He personally participated in the conduct which forms the basis of this action.

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND** Page 3

## IV.
## STATEMENT OF RELEVANT FACTS

**A.**     **Uber's Hype and Hypocrisy**

10.     Launched in San Francisco in 2010, Uber Technologies, Inc. ("Uber" or "the Company") provides a downloadable smartphone application (the "App") connecting riders with drivers throughout the United States, including in New York.

11.     Uber controls all aspects of the drivers' monetary relationship with the customer – setting the fares drivers charge and collect and limiting the drivers' contact with a customer for rides outside of the App.

12.     Uber's primary source of revenue is a significant percentage of charges to passengers for rides taken.[1] Its business model requires a large pool of drivers in order to provide rides to consumers quickly and efficiently. To accomplish this, Uber solicits and retains thousands of drivers.

13.     The application process to become an Uber driver is simple, fast, and designed to facilitate the hiring of as many drivers as possible while incurring minimal associated costs. Such cost savings, however, come at the expense of passenger safety.

14.     The services provided by Uber and its drivers promised to be safe, secure, and upscale, but in reality, are no different than those performed by taxi drivers or black car drivers. In order to avoid liability for and the heightened state regulatory oversight to which those services are generally subject, however, Uber bills itself as a "technology platform" or "transportation network" company. As a corollary to this self-serving classification, Uber takes a hand-off approach when it comes to monitoring the safety of driver-passenger interactions.

---

[1] *See, e.g.,* Ellen Huet, *Uber Now Taking its Biggest UberX Commission Ever – 25 Percent*, FORBES (Sept. 22, 2014), *available at* http://www.forbes.com/sites/ellenhuet/2014/09/22/uber-now-taking-its-biggest-uberx-commission-ever-25-percent (last visited: Sept. 22, 2020).

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**                                                **Page 4**

B. <u>Uber's Misrepresentations of Safety</u>

15. Despite providing minimal background checks and no oversight or monitoring of its drivers, Uber nonetheless affirmatively induces passengers, particularly young, unaccompanied, vulnerable women, to use its services with the false expectation of safety.

16. Uber targets these customers via various campaigns which intentionally promote an affirmatively cultivated image of Uber as the "safest rides on the road." Female passengers are often depicted in these ads smiling as they enter and exit vehicles, which are meant to appear "safe."





17. In particular, Uber markets itself as the best option for passengers who are "under the influence." Uber's partnership with Mothers Against Drunk Driving, for example, includes a "designated rider" campaign urging users to take an Uber to avoid driving under the influence. In 2015, Uber set up a pop-up kiosk in Toronto to offer free rides to those who blew into breathalyzers. This type of targeted marking achieved its goal – customers view Uber as a safe alternative to drinking and driving.



**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**                                   Page 6

18. Uber made similar claims on its website:

> Wherever you are around the world, Uber is committed to connecting you to the safest ride on the road. That means setting the strictest safety standards possible, and then working hard to improve them every day. The specifics vary depending on what local governments allow, but within each city we operate, we aim to go above and beyond local requirements to ensure your comfort and security – what we are doing in the US is an example of our standards around the world.
>
> From the moment you request a ride to the moment you arrive, the Uber experience has been designed from the ground up with your safety in mind.
>
> Making cities better is at the heart of everything we do. It's much more than improving the way people get around. It's celebrating what makes those cities special, caring about the people who make them great, and being responsible citizens. That's why we work hard to keep our streets safe for everyone, whether they're on foot, on a bike, or in another car.

19. What Uber failed to disclose is that only minimal safety precautions are provided to an intoxicated rider once inside the vehicle. Uber undertakes no safeguards to monitor drivers or ensure riders safely arrive at their destinations.

20. By 2012, Uber was aware that its drivers were sexually assaulting female customers. Since that time, Uber has been aware—via customer complaints and law enforcement investigations—of ongoing sexual assaults by Uber drivers.

21. Unfortunately, Uber did not see this as a health and safety concern for its riders – but rather, as liability and public relations "concerns." Up until May 2018, Uber imposed a mandatory arbitration for individual claims of sexual assault and harassment, thereby keeping many of these early incidents shrouded in secrecy.[2] Further, up until May 2018, Uber forced

---

[2] *See* Domonske, Camila, *Uber will no longer force sexual assault survivors into arbitration or NDAs*, NPR, (May 15, 2018), *available at* https://www.npr.org/sections/thetwo-way/2018/05/15/611288966/uber-will-no-longer-force-sexual-assault-survivors-into-arbitration-or-ndas (last visited: Sept. 22, 2020).

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**                                                                    Page 7

survivors of sexual assault to sign nondisclosure agreements, prohibiting the victims from talking about their experience, and generally withheld data about sexual assault incidents connected to Uber rides.[3]

22. In December 2019, Uber reported nearly 6,000 reports of sexual assaults during its rides in the United States in 2017 and 2018.[4] About 92% of the victims were riders, and 89% were women or female-identifying individuals.

23. The most frequent reports were of unwanted touching of body parts—the mouth, breast, and buttocks. Uber received 1,440 such reports in 2017, and 1,560 in 2018.

24. Uber's failure to provide day-to-day supervision of its drivers not only aids predators in sexual assault scenarios, but also leads to several other safety pitfalls. Despite the availability of technology that would enable it to monitor the activities of the drivers, Uber failed to evaluate or monitor when the drivers were themselves are intoxicated, under the influence of other drugs, or bear malintent. This is problematic for many obvious reasons, not least of which is because Uber drivers can take a passenger to an unselected destination, stop for alcoholic drinks and/or illicit substances or illicit activities, and then turn the App back on and continue driving, putting the passenger in unnecessary danger.

25. Despite the ongoing reports of sexual assaults to Uber by women who use its service, Uber has done little, if anything, to minimize the risk of these incidents from taking place. It requires no in-vehicle video; it does not monitor when drivers stop or deviate from the assigned route. Until recently, and at no point prior to Plaintiff's assault, Uber did not even provide

---

[3] *See id.*

[4] *See* Kate Conger, *Uber Says 3,045 Sexual Assaults Were Reported in U.S. Rides Last* Year, N.Y. TIMES (Dec. 5, 2019), *available at* https://www.nytimes.com/2019/12/05/technology/uber-sexual-assaults-murders-deaths-safety.html (last visited: Sept. 22, 2020).

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**                                                    **Page 8**

customers a phone contact option. Uber only recently, as of September 2020, finally began offering a bare minimum of educational videos to its drivers.

26. Uber continues to target solo women travelers with false statements regarding the safety of its services, while simultaneously disclaiming any responsibility for ensuring such safety.[5]

### C. The Sexual Assault of Plaintiff

27. On June 7, 2018, Plaintiff Mrs. Doe spent a long day in Manhattan, commuting in at 6:00 a.m. from her home in Rye Brook, New York, working a full day at her office on Wall Street and then meeting several of her friends to celebrate a birthday.

28. The group visited a number of bars and restaurants. At the end of the evening, Mrs. Doe and one of her close friends stopped at Death Avenue Brewery in the Chelsea neighborhood of Manhattan, New York, where they indulged in a final round of celebratory alcoholic beverages.

29. At approximately 1:20 a.m., relying on Uber's numerous campaigns billing itself as the safe option for intoxicated individuals, Plaintiff ordered an Uber to get her safely back home to Rye Brook. Plaintiff has Uber VIP status, which Uber markets to its users as an upgraded experience with more experienced drivers. Plaintiff selected and used the VIP option.

30. Shortly after requesting the ride, Plaintiff received confirmation from the App that her driver, Iqbal Hussain, was on his way to pick her up in a Toyota Camry. At this point, Plaintiff called her father to let him know that she was fine and about to go home.

31. When Hussain arrived, Plaintiff confirmed he was the correct driver and entered the rear of his vehicle. At that time of night with low traffic, Google Maps (upon which Uber's

---

[5] *See* Uber's Terms of Service: "UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD-PARTY PROVIDERS," *available at* https://www.uber.com/legal/en/document (last visited Sept. 22, 2020).

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**            **Page 9**

data is based), estimated that the ride should have taken 40 to 45 minutes. Given the lateness of the hour and comforted by being escorted by Uber's premier driving service, Plaintiff allowed herself to nod off in the car.

32. Plaintiff was awoken by a touch on her vagina. Hussain had stopped the car and was next to her in the backseat with his hand up her skirt. After becoming awake and aware of the situation, Plaintiff began to punch Hussain as hard as she could. Hussain attempted to restrain Plaintiff's right wrist, twisting Plaintiff's arm and causing her excruciating pain. Plaintiff screamed for him to stop.

33. Hussain eventually relented, took a few moments to exit the vehicle, stood outside before re-entering the front driver's seat, as if nothing had happened. He continued the ride to Plaintiff's residence. Fearing further conflict with Hussain as well as the consequences of being abandoned on the side of the road at that hour of the morning, Plaintiff remained in the car- silent, shaken, unable to use her right arm, and afraid.

34. Plaintiff arrived at her home at 2:35 a.m., at least 30 minutes later than the original time of arrival, far later than Google had estimated the ride should have taken. She called her husband and he met her at the door. She then tearfully revealed the events that had just occurred and asked her husband to make sure that the vehicle had left her house. In a state of shock and filled with fear, she quietly cried herself to sleep.

35. The following morning, Plaintiff awoke to debilitating pain. Her right arm was "killing her" and she could not move it in any direction. She also observed bruising and scratches around her right wrist, where Hussain had grabbed her during his attack.

36. Plaintiff and her husband discussed the assault. She then called one of her best friends and tearfully recounted what had happened to her. At the advice of her friend, Plaintiff then called the police to report the incident.

37. At approximately 10:00 a.m. on June 8, 2018, Port Chester, Rye Brook Emergency Medical Services ("EMS") were dispatched to a call of an "Assault, Unarmed" at Plaintiff's home address. Plaintiff complained of a possibly dislocated right shoulder as a result of the sexual assault the night before.

38. Plaintiff was transported by ambulance to Westchester Medical Center in a robe because she could not bear the pain of getting dressed. At the hospital, she again recounted the night's events, including waking up to find the Uber driver touching her vagina.

### D. The Damage Done

39. The hospital diagnosed Plaintiff with a strain and provided a sling and instructions to follow up with her primary care physician for further treatment. Upon completion of her exam, Plaintiff required assistance with getting dressed, as she was still experiencing significant pain and a limited use of her right arm. An MRI performed by orthopedic & neurosurgery specialists a few days later showed that Plaintiff's right shoulder was fractured.

40. Plaintiff also began treatment with a psychiatrist who diagnosed her with post-traumatic stress disorder ("PTSD"), anxiety and a major depressive disorder as a result of the assault. Plaintiff was prescribed a variety of medications meant to stabilize her through her post-traumatic stress disorder. Plaintiff continues to suffer from these conditions.

41. The terrifying events that occurred in the early hours of June 8, 2018 required Plaintiff to engage a variety of psychiatric and physical health professionals, which resulted in missing countless days of work. She no longer feels safe in the company of others – affecting her job, and has been forced to step back from some of her work duties fearing a situation in which

she will be required to take a car home to Rye Brook from the city. She has had to endure steroid shots, intense physical therapy and continues to suffer pain in her arm, which has not yet healed. The extreme emotional, physical, and psychological trauma of the events of that evening continues to haunt Plaintiff – who is now a shadow of her former self.

Moreover, Plaintiff became pregnant in September of 2018. Plaintiff experienced complications during her pregnancy, causing her to be in and out of the hospital for extended periods of time. The physical, emotional, and psychological trauma of the event of that evening contributed in large part to the complications.

E.   **Uber's Negligence Is Responsible For Plaintiff's Injury**

42.   Despite the clear pattern of sexual assaults on female passengers years before June 8, 2018, Plaintiff was provided no warning by Uber. Nor were any steps taken to ensure Plaintiff was safe, such as alerting the authorities or contacting Plaintiff once the App registered that the vehicle was stopped at two different points outside of the original route before she was taken home. Further, it does not appear that any reasonable driver monitoring was in place to protect Plaintiff from the sexual predator Uber allowed to use its brand to lure her in.

43.   Uber made a deliberate decision to adopt inadequate screening and safety monitoring in favor of profits at the risk of its customers.

44.   The ongoing safety issues, most notably sexual assaults, have long been known to Uber. Prior to the attack on Plaintiff, Uber knew that a consequence of its business model has been exposing women, who are using the business for a safe ride home, to drivers that may take advantage of their vulnerable position. Despite being a company that holds itself out to the public as being engaged in the safe transportation of its customers from place to place for compensation, Uber has failed to take any reasonable precautions to attempt to prevent harm to its passengers.

45. Although Uber was aware of this issue and its prevalence, the Uber website does not provide clear information regarding how to report such incidents. In the event a customer wishes to report an incident, a consumer must sift through pages of text and click through multiple links in order to even locate the section in which to make the report.

46. Uber is not only negligent in its hiring process but also in the monitoring of the drivers it hires. In particular, given its knowledge of sexual assaults of its customers by its drivers, Uber should have implemented a monitoring system in order to protect victims.

47. Uber understands that many assaults occur when drivers deviate from their route, sometimes turning off the ride and App before the destination is reached. However, despite Plaintiff's driver leaving the route and stopping, no alerts sounded. Further, common sense dictates that if Uber used its state-of-the-art technology to record or watch drivers, they would reduce assaults greatly. If Uber was recording or watching Plaintiff's Uber driver, she likely would have been spared the horrible incident from which she still suffers.

## V.
## CLAIMS

### A. First Cause of Action (Negligence)

48. Plaintiff incorporates and re-alleges all preceding allegations.

49. Uber had a non-delegable duty to ensure the safety of riders using its transportation services, including the safety of Plaintiff.

50. Uber failed to take reasonable steps to ensure the safety of riders by (i) failing to adequately screen its drivers; (ii) failing to employ any system to monitor its drivers while transporting passengers; (iii) failing to provide notification services to riders; and (iv) by concealing and affirmatively misrepresenting the danger—especially to female riders—of its service.

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**  Page 13

51. Plaintiff was harmed as a direct and proximate result of Uber's negligence.

**B.     Second Cause of Action (Negligent Infliction of Emotional Distress)**

52. Plaintiff incorporates and re-alleges all preceding allegations.

53. Uber had a direct and special non-delegable duty to ensure the safety of riders using its transportation services, including the safety of Plaintiff.

54. Uber failed to take reasonable steps to ensure the safety of riders by (i) failing to adequately screen its drivers; (ii) failing to employ any system to monitor its drivers while transporting passengers; (iii) failing to provide notification services to riders; and (iv) by concealing and affirmatively misrepresenting the danger—especially to female riders—of its service.

55. Plaintiff suffered and continues to suffer severe emotional distress as a direct and proximate result of Uber's gross negligence.

**C.     Third Cause of Action (Deceptive Practices Act, N.Y. Gen. Obl. l. §349 et. seq.)**

56. Plaintiff incorporates and re-alleges all preceding allegations.

57. Uber made repeated, material misrepresentations to riders regarding the safety of its services.

58. Uber's misrepresentations were consumer-oriented.

59. Uber's misrepresentations were willfully and knowingly made.

60. Plaintiff suffered and continues to suffer harm as a result of Uber' deception.

## VI.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant, specifically containing the following relief:

    a. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all physical and economic harm, including but not limited to, compensation for mental anguish and emotional distress, physical injuries, and all other monetary or non-monetary losses to Plaintiff;

    b. An award of treble or punitive damages pursuant to N.Y. Gen. Obl. L. § 349; and,

    c. Any such other relief as the Court may deem just and proper.

## VII.
## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of facts and damages stated herein.

New York, New York
Dated: September 28, 2020                    Respectfully submitted,

                                    By:   */s/ William A. Brewer, III, Esq.*
                                             William A. Brewer, III, Esq.
                                             wab@brewerattorneys.com
                                           **BREWER, ATTORNEYS & COUNSELORS**
                                           750 Lexington Avenue, 14th Floor
                                           New York, New York 10022
                                           Telephone: (212) 489-1400
                                           Facsimile: (212) 751-2849

                                           **ATTORNEY FOR JANE DOE**

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**                **Page 15**

## ATTORNEY VERIFICATION

STATE OF NEW YORK    :
                     : ss.:
COUNTY OF NEW YORK   :

William A. Brewer, III, an attorney duly licensed to practice law in the State of New York, hereby affirms the following subject to penalties of perjury:

I am a partner of the law firm Brewer, Attorneys & Counselors, attorneys for Plaintiff JANE DOE in the above-captioned action and, as such, am fully familiar with the facts and circumstances set forth therein.

I have read the foregoing Complaint and know the contents thereof, and the same is true to the best of my knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true. The source of my information is a file containing reports and records of the investigation, with which I am familiar.

This Verification is made by counsel because Plaintiff resides outside the county where Your Affirmant maintains his office, in accordance with CPLR § 3020(d)(3).

New York, New York
Dated: September 28, 2020                Respectfully submitted,


                                         By:   */s/ William A. Brewer, III, Esq.*
                                               William A. Brewer, III, Esq.
                                               wab@brewerattorneys.com
                                               **BREWER, ATTORNEYS &
                                               COUNSELORS**
                                               750 Lexington Avenue, 14th Floor
                                               New York, New York 10022
                                               Telephone: (212) 489-1400
                                               Facsimile: (212) 751-2849

                                               **ATTORNEYS FOR JANE DOE**