# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JANE DOE,** | : |
| | : |
| | : *Civil Action No.*: **1:20-cv-08446-LJL** |
| **Plaintiff,** | : |
| | : |
| v. | : **PLAINTIFF'S MEMORANDUM OF** |
| | : **LAW IN OPPOSITION TO** |
| **UBER TECHNOLOGIES, INC.,** | : **DEFENDANT'S** |
| | : **MOTION TO DISMISS** |
| **Defendant.** | : |
| | : |

Claudia V. Colón García-Moliner
William A. Brewer, III

**BREWER, ATTORNEYS & COUNSELORS**
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849
cvm@brewerattorneys.com
wab@brewerattorneys.com

**ATTORNEYS FOR PLAINTIFF JANE DOE**

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ...................................................................................................1

II. FACTUAL BACKGROUND ....................................................................................................2

III. LEGAL STANDARD .............................................................................................................4

IV. ARGUMENT ...........................................................................................................................5

     A.      Plaintiff Pleaded Sufficient Facts To Support A Claim Of Negligence
           Against Defendant Upon Which Relief Can Be Granted. ......................................5

          1.     Uber owes a general duty of care to its riders, including Plaintiff,
               and breached that duty by failing to implement appropriate safety
               measures while knowing that thousands of sexual assault incidents
               occurred during Uber rides, and at the same time holding itself out
               to be a safe option for a ride home.............................................................7

          2.     Uber's conduct proximately caused Plaintiff's injuries because, but
               for Uber's targeted advertising as the safe option for a ride home,
               Plaintiff would not have summoned an Uber to get home that night.
               .................................................................................................................9

     B.      Plaintiff Pleaded Sufficient Facts To State A Claim For Negligent Infliction
           Of Emotional Distress Against Defendant Upon Which Relief Can Be
           Granted.................................................................................................................12

     C.      Plaintiff Pleaded Sufficient Facts To State A Claim For Deceptive Trade
           Practices Against Defendant Upon Which Relief Can Be Granted. ......................13

     D.      Should This Court Find That Plaintiff Has Failed To Sufficiently Plead Her
           Claims, This Court Should Grant Plaintiff Leave To Amend Her Complaint.
           .............................................................................................................................16

V. CONCLUSION .......................................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Fidelity & Casualty Co. of New York*,
228 N.Y. 475, 127 N.E. 584 A.L.R. 1544 (1920).......................................................................3

*Colorado Capital v. Owens*,
227 F.R.D. 181 (E.D.N.Y. 2005) ........................................................................................9, 10

*Doe v. Uber Techs., Inc.*,
184 F. Supp. 3d 774 (N.D. Cal. 2016) ....................................................................................8

*Foman v. Davis*,
371 U.S. 178, 83 S.Ct. 227 (1962)........................................................................................16

*Frasier v. General Elec., Co.*,
930 F.2d 1004 (2d Cir.1991)...................................................................................................9

*Friedl v. City of New York*,
210 F.3d 79 (2d Cir. 2000)......................................................................................................5

*Gerstle v. Nat'l Credit Adjusters, LLC*,
76 F. Supp. 3d 503, 509 (S.D.N.Y. 2015) .........................................................................4, 5

*Gorne v. Uber Techs., Inc.*,
No. C19-1138.........................................................................................................................15

*Greenfield v. Suzuki Motor Co.*,
776 F. Supp. 698 (E.D.N.Y. 1991) .........................................................................................9

*Havas v. Victory Paper Stock Co.*,
49 N.Y.2d 381, 402 N.E.2d 1136, 426 N.Y.S.2d 233 (1980)..................................................8

*Hiralall v. Sentosacare, LLC*,
No. 13 CIV. 4437 (GBD), 2016 WL 1126530 (S.D.N.Y. Mar. 18, 2016) .............................12

*Hudson Bay Master Fund Ltd. V. Patriot Nat'l, Inc.*,
309 F. Supp. 3d ......................................................................................................................5

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*,
309 F. Supp. 3d 100 (S.D.N.Y. 2018), *reconsideration denied*, No. 16 CIV.
2767 (GBD), 2019 WL 1649971 (S.D.N.Y. Mar. 28, 2019)....................................................5

*JG & PG ex rel. JGIII v. Card*,
No. 08 CIV. 5668 (KMW), 2009 WL 2986640 (S.D.N.Y. Sept. 17, 2009)...........................12

*Karuba v. Delta Air Lines, Inc.*,
   No. 87 CIV. 1455 (CSH), 1991 WL 51093 (S.D.N.Y. Apr. 3, 1991) ......................................3

*L.A. Taxi Cooperative, Inc. v. Uber Technologies Inc.*,
   114 F.Supp.3d 852 (N.D. Cal. 2015) .......................................................................15

*Leon v. Martinez*,
   84 N.Y.2d 83 (1994) ...............................................................................................13

*Mazella v. Beals*,
   27 N.Y.3d 694, 57 N.E.3d 1083 (2016).................................................................9, 10

*Minzer v. Barga*,
   No. 151979/2019, 2020 WL 2621710 (N.Y. Sup. Ct. May 22, 2020)....................................15

*Murray v. Uber Techs., Inc.*,
   No. CV 20-11250-NMG, 2020 WL 5502253 (D. Mass. Sept. 11, 2020)..................................8

*Nallan v. Helmsley–Spear, Inc.*,
   50 N.Y.2d 507, 407 N.E.2d 451, 429 N.Y.S.2d 606 (1980).......................................8

*O'Brien v. Public Service Taxi Co.*,
   83 F. Supp. 55 (M.D. Pa. 1949) .................................................................................8

*Palka v. Servicemaster Mgmt. Servs. Corp.*,
   83 N.Y.2d 579, 634 N.E.2d 189, 611 N.Y.S.2d 817 (1994).......................................7

*Phillips v. Uber Tech.*,
   No. 16 CIV. 295 (DAB), 2017 WL 2782036 (S.D.N.Y. June 14, 2017)..................................6

*Quinn v. Walgreen Co.*,
   958 F. Supp. 2d 533 (S.D.N.Y. 2013)......................................................................14

*Sawyer v. Wight*,
   196 F. Supp. 2d 220 (E.D.N.Y. 2002) .........................................................................5

*Shi Ming Chen v. Hunan Manor Enter., Inc.*,
   437 F. Supp. 3d 361, 364 (S.D.N.Y. 2020)...............................................................16

*Stagl v. Delta Airlines, Inc.*,
   52 F.3d 463 (2d Cir.1995)............................................................................................7

*Stevens v. Kirby*,
   86 A.D.2d 391, 450 N.Y.S.2d 607 (4th Dep't 1982)..................................................8

*Tinkham v. Groveport-Madison Local Sch. Dist.*,
   77 Ohio App. 3d 242, 602 N.E.2d 256 (1991).........................................................8

*Turturro v. City of New York*,
   28 N.Y.3d 469, 68 N.E.3d 693 (2016)....................................................................................10

**Statutes**

New York General Business Law § 349.................................................................................13, 14

**Other Authorities**

Federal Rule of Civil Procedure 15(a)(2) ......................................................................................16

Federal Rule of Civil Procedure 12(b)(6) ........................................................................1, 4, 5, 9

Restatement (Third) of Torts: General Principles § 6 (Discussion Draft April 5,
   1999) ......................................................................................................................................7

Federal Rule of Civil Procedure 9(b).............................................................................................14

Plaintiff Jane Doe submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss, and states in support as follows:

## I.
## PRELIMINARY STATEMENT

This action arises from a tragic event, in which an Uber Technologies, Inc. ("Defendant" or "Uber") driver sexually assaulted Plaintiff during a ride from downtown Manhattan to her home in Rye Brook, New York. As a result of the attack, Plaintiff suffered severe physical, emotional, and psychological harms. Uber's marketing as a "safe ride" option, coupled with its substandard safety precautions, are direct causes of Plaintiff's injuries. Plaintiff therefore filed this lawsuit, asserting claims for negligence, negligent infliction of emotional distress, and deceptive trade practices.

Uber filed a motion to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Uber argues that it is not responsible for the conduct of its driver, disclaiming any representations about the safety of its services, as well as any duty to Plaintiff. Uber also posits that receipt by its driver of a New York City Taxi and Limousine Commission license satisfies its obligations to Plaintiff.

Uber fails to show that Plaintiff has not adequately pleaded her claims at the motion to dismiss stage. Plaintiff alleges that she trusted Uber, a household name brand, to deliver her safely between destinations. In blatant disregard for its duties to its customers, including Plaintiff, Uber failed to implement appropriate safety standards, both in hiring its drivers and monitoring of its services. It was solely because Uber held itself out as being the safe option for women to get home that she used Uber's services. However, despite its promises of a "safe ride" to its customers, Uber did not properly vet or monitor its drivers. In fact, since at least 2012, Uber was aware that its drivers were pervasively sexually assaulting female customers. Since that time, Uber was aware –

via customer complaints and law enforcement investigations – of ongoing sexual assaults by Uber drivers. Uber's business model is premised on cutting corners on safety and regulatory measures to deliver as many rides as possible. Indeed, it was these inferior safety precautions, in addition to Uber's misleading marketing touting the safety of its services, that resulted in Plaintiff's harms. Uber's remaining arguments, including its contention regarding the merit of its driver's form of licensure, amount to factual disputes, which bear no consideration on a motion to dismiss, and should be ignored.

The Court should deny Defendant's motion to dismiss in its entirety.

## II.
## FACTUAL BACKGROUND

Plaintiff is the victim of sexual assault perpetrated by a driver employed by Defendant, Uber Technologies, Inc. The claims arise from a horrific event that occurred on June 8, 2018. After working a full day at her office in lower Manhattan, Plaintiff met several of her friends to celebrate a birthday.[1] At the end of the celebration, Plaintiff, relying on Uber's numerous campaigns billing itself as the safe transportation option for inebriated individuals,[2] ordered an Uber to return safely back from Manhattan to her home in Rye Brook, New York.[3]

At around 1:20 a.m., when Plaintiff requested the car, the Uber application estimated that the ride home would take between 40 and 45 minutes.[4] Given the lateness of the hour and

---

[1] *See* Plaintiff's Original Complaint, attached as Exhibit ("Ex.") A to the Declaration of Claudia V. Colón (the "Colón Decl."), at ¶ 47.

[2] These campaigns include statements on Defendant's website, Uber's partnership with Mothers Against Drunk Driving and its "designated rider" campaign, and a pop-up kiosk in Toronto to offer free rides to inebriated persons. *See* Colón Decl., Ex. A at ¶ 15-18.

[3] *See* Colón Decl., Ex. A, at ¶ 29.

[4] *See* Colón Decl., Ex. A, at ¶ 31.

comforted by Uber's promises of safety, Plaintiff nodded off in the car.[5]  Plaintiff was abruptly

awoken by the Uber driver's shocking touch on her genitals.[6] She struggled to free herself from

her attacker, which resulted in a severe physical injury, in addition to intense emotional and

psychological distress.[7] As a result of the injury sustained while trying to fend off her attacker,

Plaintiff was left unable to defend herself.[8] After a few minutes the Uber driver relented, and

returned to the driver's seat, as if nothing had happened.[9] Fearing further conflict with the Uber

driver as well as the potential of being abandoned on the side of the road at that hour of the

morning, Plaintiff remained in the car– silent, shaken, unable to use her right arm, and afraid.[10]

Plaintiff eventually made it home to her husband, at least 30 minutes later than the original time

of arrival.[11]

As set forth in the Complaint, although Uber purports to disclaim—via fine print included

in its Application's terms and conditions—any responsibility for the actions of its drivers, the

services provided by Uber are no different than those performed by taxi drivers or black car drivers,

which owe passengers a standard duty of reasonable care.[12] Uber heavily targets young, single

women in its advertising with promises of a "safe" transportation.[13] Although it constantly touts

---

[5] *See* Colón Decl., Ex. A, at ¶ 31.

[6] *See* Colón Decl., Ex. A, at ¶ 32.

[7] *See* Colón Decl., Ex. A, at parts C and E.

[8] *See* Colón Decl., Ex. A, at ¶ 33.

[9] *Id.*

[10] *Id.*

[11] *See* Colón Decl., Ex. A, at ¶ 34.

[12] *See* Colón Decl., Ex. A, at ¶ 14. *See also Anderson v. Fidelity & Casualty Co. of New York*, 228 N.Y. 475, 476, 127 N.E. 584, 9 A.L.R. 1544 (1920) ("A taxi cab comes within the definition of a common carrier."); *Karuba v. Delta Air Lines, Inc.*, No. 87 CIV. 1455 (CSH), 1991 WL 51093, at *2 (S.D.N.Y. Apr. 3, 1991) ("The Second Circuit has repeatedly held, construing New York law, that a common carrier for hire owes to its passengers reasonable care under the circumstances.").

[13] *See* Colón Decl., Ex. A, at ¶ 1.

3

its safety, Uber knows that its historically lax screening procedures for its drivers has resulted in thousands of women being sexually assaulted by Uber drivers.[14] Even after the drivers begin carrying out Uber's services, Uber provides zero oversight of its employees while riders are in their care.[15]

At the time Plaintiff entrusted Uber with her safety, Uber knew that the tens of thousands of women who hired Uber to obtain a safe ride home were actually at risk – but chose to do nothing to protect them.[16] In Plaintiff's case, the lack of oversight is especially apparent: the driver, who is subject to constant GPS tracking via Uber's Application, stopped along his prescribed route, which should have raised red flags and prompted some action by Uber.[17] It did not.

On September 28, 2020, Plaintiff filed this lawsuit, asserting claims for negligence, negligent infliction of emotional distress, and deceptive trade practices. On October 30, 2020, Uber moved to dismiss. For the reasons set forth herein, this Court should deny Uber's Motion to Dismiss in its entirety.

### III.
### LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor.[18] The complaint need only include "enough facts to state a claim to relief that is plausible on its face."[19] "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *See* Colón Decl., Ex. A, at ¶ 2.

[18] *Gerstle v. Nat'l Credit Adjusters, LLC*, 76 F. Supp. 3d 503, 509 (S.D.N.Y. 2015); *citing McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007).

[19] *Id.*, *citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] Dismissal is "appropriate only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "[21]

To survive a Rule 12(b)(6) motion to dismiss, a complaint must also contain sufficient factual matter to "state a claim for relief that is plausible on its face.'"[22]  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[23]  This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[24] As stated above, the court draws *all* reasonable inferences in the *non-moving* party's favor.[25]

## IV.
## ARGUMENT

**A.     Plaintiff Pleaded Sufficient Facts To Support A Claim Of Negligence Against Defendant Upon Which Relief Can Be Granted.**

To establish a case of negligence under New York law, a plaintiff must prove several distinct elements: duty, breach, causation and damages.[26]

Plaintiff alleges that Uber was negligent by failing to adequately screen its drivers, failing to employ safety measures while drivers are transporting passengers, and concealing and

---

[20] *Id.*, *citing Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

[21] *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000).

[22] *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 309 F. Supp. 3d 100, 112 (S.D.N.Y. 2018), *reconsideration denied*, No. 16 CIV. 2767 (GBD), 2019 WL 1649971 (S.D.N.Y. Mar. 28, 2019) *citing Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[23] *Id.*

[24] *Id.*

[25] *Hudson Bay Master Fund Ltd. V. Patriot Nat'l, Inc.*, 309 F. Supp. 3d at 112, citing *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC,* 709 F.3d 109, 119 (2d Cir. 2013).

[26] *Sawyer v. Wight*, 196 F. Supp. 2d 220, 226 (E.D.N.Y. 2002).

affirmatively misrepresenting the danger – especially to female riders, like Plaintiff – of its service.[27] In support of these claims, Plaintiff asserts that Uber breached its duty of ordinary care owed to its customers. Because Uber's business model requires a large pool of drivers to provide its services, the application process to become an Uber driver is simple and fast, allowing Uber to hire as many drivers as possible with minimal associated costs.[28] Such cost savings measures, however, come at the expense of passenger safety. Indeed, Uber knew of pervasive accounts of sexual assaults by its drivers, and still affirmatively represented itself as the safe option for a ride home – even particularly for women and for persons under the influence of alcohol. Despite this awareness of the thousands of sexual assaults by its drivers, Uber failed to implement safety features to properly monitor its drivers while transporting customers. Such blatant failure to mitigate the foreseeable risk of sexual assault resulted in Plaintiff's injuries.

Uber disclaims liability for the acts of its driver, arguing that the driver acted beyond the scope of his employment, and that, therefore, Uber cannot be held vicariously liable. In support, Uber cites *Phillips v. Uber Tech*.[29] In *Phillips*, this Court dismissed plaintiff's action for false imprisonment, assault and battery against Uber, holding (without determining whether the driver was an employee or independent contractor of Uber) that the driver's tortious conduct necessarily occurred outside of the scope of the employment, and could not be reasonably anticipated by Uber, therefore Uber could not be liable.  However, the *Phillips* case is certainly distinguishable from Plaintiff's claims here because Plaintiff is not seeking to hold Uber liable for the assault *per se*, but rather is seeking to hold Uber accountable for its failure to implement proper safety

---

[27] *See* Colón Decl., Ex. A at ¶ 51.

[28] *See* Colón Decl., Ex. A at ¶ 12-13.

[29] No. 16 CIV. 295 (DAB), 2017 WL 2782036 (S.D.N.Y. June 14, 2017). *See* Exhibit B to Defendant's Memorandum of Law in Support of Motion to Dismiss, ECF No. 11.

6

mechanisms to prevent an attack that was foreseeable (given the history and high number of prior sexual attacks by its drivers). Here, Plaintiff also claims that Uber's false representation that it was the safe ride home caused her to solicit Uber's services. Thus, Plaintiff alleges that Uber's acts are an *independent* source of her injuries, apart from the sexual assault perpetrated by the Uber driver.

Defendant's argument that it owes no duty to Plaintiff, and that because its drivers are regulated by the New York City Taxi and Limousine Commission, Uber cannot be liable for improper screening and supervision of its drivers, misses the mark in that it completely ignores Uber's duty of ordinary care owed to Plaintiff for her negligence claims. This argument also disputes facts alleged by Plaintiff, which is improper on a motion to dismiss.

Under the general negligence standard, Plaintiff's adequately alleges the existence of a duty, breach of that duty, causation, and damages to survive Defendant's Motion to Dismiss.

1. **Uber owes a general duty of care to its riders, including Plaintiff, and breached that duty by failing to implement appropriate safety measures while knowing that thousands of sexual assault incidents occurred during Uber rides, and at the same time holding itself out to be a safe option for a ride home.**

The definition of a duty of care by one member of society to another is determined by the court.[30]  Usually, a general duty to avoid negligence is assumed, and there is no need for the court to undertake detailed analysis of precedent and policy.[31]  Under established negligence principles:

> [W]henever one person is by circumstances placed in such a position
> with regard to another that everyone of ordinary sense who did think
> would at once recognize that if he did not use ordinary care and skill
> in his own conduct with regard to the circumstances he would cause
> danger of injury to the person or property of the other a duty arises

---

[30] *See, e.g., Palka v. Servicemaster Mgmt. Servs. Corp.,* 83 N.Y.2d 579, 585, 634 N.E.2d 189, 192, 611 N.Y.S.2d 817, 820 (1994).

[31] *See Stagl v. Delta Airlines, Inc.,* 52 F.3d 463, 469 (2d Cir.1995); Restatement (Third) of Torts: General Principles § 6 (Discussion Draft April 5, 1999) (findings of no duty rare).

to use ordinary care and skill to avoid such danger.[32]

Under New York law, courts have recognized the existence of a duty predicated on the danger of a third party's tortious misconduct, and that the existence of a protective relationship—such as, for example, the relationship between a carrier and its passenger—obligates the defendant to take reasonable steps to protect from foreseeable risks, *including the conduct of others.*[33]

Indeed, many courts in other states have persuasively held that Uber and taxicab companies alike are liable for assaults upon passengers by their drivers.[34] As in *Murray v. Uber*, Plaintiff here alleges that Uber owed a duty to its rider, and that Uber breached its duty to provide her safe travel while utilizing Uber's services, because Uber failed to implement adequate security measures, such as features that would alert authorities of erratic or unexpected driver misconduct.[35] Again, according to Plaintiff, Uber should have known that its failure to implement safety features would cause her the kind of injuries Plaintiff sustained.[36] The *Murray* court held that Plaintiff, in analogous circumstances, stated a claim for negligence.

---

[32] *Havas v. Victory Paper Stock Co.,* 49 N.Y.2d 381, 386, 402 N.E.2d 1136, 1138, 426 N.Y.S.2d 233, 236 (1980) (*quoting Heaven v. Prender,* 11 Q.B.D. 503, 509 (1883)).

[33] *See, e.g., Nallan v. Helmsley–Spear, Inc.,* 50 N.Y.2d 507, 518–19, 407 N.E.2d 451, 457–58, 429 N.Y.S.2d 606, 613 (1980) (owner and manager of building in which plaintiff was shot owed duty to those who ventured on premises to take reasonable steps to minimize foreseeable danger to them); *Stevens v. Kirby,* 86 A.D.2d 391, 394, 450 N.Y.S.2d 607, 610 (4th Dep't 1982) (tavern owner owed duty to patrons to protect them from personal attack "when he has reasonable cause to anticipate conduct on the part of third persons which is likely to endanger their safety").

[34] *See, e.g., O'Brien v. Public Service Taxi Co.*, 83 F. Supp. 55, 57-60 (M.D. Pa. 1949) (denying the defendant's motion to set aside the jury's verdict against it for its driver's assault of the plaintiff because the taxicab company, as a common carrier, owed its passenger a non-delegable duty to protect him, and concluding that the carrier is "liable for a passenger's injuries" sustained as a result of an "unprovoked and willful assault upon the passenger while he was being transported and while the driver was engaged in executing the contract of carriage"); *Tinkham v. Groveport-Madison Local Sch. Dist.*, 77 Ohio App. 3d 242, 602 N.E.2d 256 (1991) (whether taxicab driver was employee or independent contractor, taxicab company was still liable for driver's sexual assault on passenger in breach of carrier's non-delegable duty) (overruled on other grounds); *Doe v. Uber Techs., Inc.*, 184 F. Supp. 3d 774 (N.D. Cal. 2016) (denying Uber's motion to dismiss the plaintiff's vicarious liability because "[t]he liability of a common carrier for an assault by one of its employees on a passenger is not dependent on the question as to whether the employee was acting within the scope of his authority or in the line of his duty, but is based upon its broad duty as a common carrier to protect its passengers from assault").

[35] *Murray v. Uber Techs., Inc.*, No. CV 20-11250-NMG, 2020 WL 5502253, at *6 (D. Mass. Sept. 11, 2020).

[36] *See* Colón Decl., Ex. A at ¶ 46-48.

8

Defendant's argument that it is sufficient to have its drivers licensed by the New York City Taxi and Limousine Commission, and that because of this licensure, Uber cannot be held liable for the tortious acts of its drivers, is misplaced. This specific factual issue presents no basis for dismissal at this stage in the litigation, given the pleading standard in the Rule 12(b)(6) framework.[37]

> **2. Uber's conduct proximately caused Plaintiff's injuries because, but for Uber's targeted advertising as the safe option for a ride home, Plaintiff would not have summoned an Uber to get home that night.**

The issue of proximate cause is generally a question of fact for the jury.[38]  Plaintiff has the burden of making a prima facie showing of proximate cause to this Court in order to avoid dismissal pursuant to Rule 12(b)(6).[39] This burden "can be met by plaintiff generally showing that defendant's negligence was a substantial cause of the events which produced the injury."[40] However, plaintiff need not demonstrate that the precise manner in which the accident happened, or the extent of the injuries, was foreseeable.[41]

A defendant's negligence qualifies as a proximate cause where it is "a substantial cause of the events which produced the injury."[42] However, "[w]here the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed" and "liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence."[43] Only where

---

[37] *Frasier v. General Elec., Co.*, 930 F.2d 1004, 1007 (2d Cir.1991).

[38] *Colorado Capital v. Owens*, 227 F.R.D. 181, 189–90 (E.D.N.Y. 2005).

[39] *Greenfield v. Suzuki Motor Co.*, 776 F. Supp. 698, 701 (E.D.N.Y. 1991).

[40] *Id.*

[41] *Id.*

[42] *See Mazella v. Beals*, 27 N.Y.3d 694, 706, 57 N.E.3d 1083 (2016); *citing Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 (1980).

[43] *Id.*, *citing Parvi v. City of Kingston*, 41 NY2d 553, 560 (1977).

9

"the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct," may it possibly "break[ ] the causal nexus."[44] The mere fact that other persons share some responsibility for plaintiff's harm does not absolve defendant from liability because "there may be more than one proximate cause of an injury."[45] Finally, an "intervening act may not serve as a superseding cause, and relieve an actor of responsibility, where the risk of the intervening act occurring is the very same risk which renders the actor negligent."[46]

For purposes of stating a claim of negligence at this pleading stage, the element of proximate cause is satisfied if a plaintiff can "establish that the defendant's negligence was a substantial foreseeable factor in bringing about his or her injury."[47]  For example, the Court of Appeals of New York has held that a plaintiff presented a *prima facie* case that a defendant was liable for negligence because the defendant was aware of a dangerous condition and failed to take appropriate action to remedy it, and therefore the defendants' negligence was the proximate cause of plaintiff's injury – even where it was another actor who inflicted the injury.[48]

Here, Defendant complains that Plaintiff's negligent hiring and supervision claim "cannot show a causal connection between a lack of monitoring or notification services and the injuries alleged."[49] However, Plaintiff specifically sets forth that, despite the ongoing reports of sexual

---

[44] *Id.*

[45] *Id.*, *citing Argentina v. Emery World Wide Delivery Corp.*, 93 NY2d 554, 560 at n.2 (1999).

[46] *Turturro v. City of New York*, 28 N.Y.3d 469, 484, 68 N.E.3d 693, 705 (2016) *citing Derdiarian,* 51 N.Y.2d at 316, 434 N.Y.S.2d 166, 414 N.E.2d 666.

[47] *Colorado Capital v. Owens*, 227 F.R.D. 181, 189 (E.D.N.Y. 2005); *citing Craig Test Boring Co. v. Saudi Arabian Airlines Corp.,* 138 F.Supp.2d 553, 557 (S.D.N.Y.2001).

[48] *Turturro v. City of New York*, 28 N.Y.3d 469, 485, 68 N.E.3d 693, 706 (2016) ("We therefore hold that plaintiffs presented a prima facie case that the City was aware of a dangerous condition on Gerritsen Avenue and failed to take appropriate action to study or remedy it, and that the City's negligence was a proximate cause of Anthony's injuries.").

[49] *See* Defendant's Motion to Dismiss, ECF No. 11, at p. 10.

assaults to Uber by women who use its service, Uber did nothing to minimize the risk of these incidents from taking place.[50] Specifically, Plaintiff clearly alleges that "given [Uber's] knowledge of sexual assaults of its customers by its drivers, Uber should have implemented a monitoring system in order to protect victims," which include Plaintiff.[51] Furthermore, the Complaint sets forth that Uber's business model depends upon having a large pool of drivers in order to provide rides quickly and efficiently, which it accomplishes by purposefully soliciting and retaining tens of thousands of non-professional drivers.[52] This mechanism comes at the expense of the safety of riders, particularly female riders like Plaintiff. These systemic issues resulted in Plaintiff's injury, because but for Uber's negligence in failing to implement sufficient safety standards while being aware of the thousands of instances of similar sexual attacks by its drivers, and marketing itself as a "safe" option, Plaintiff would not have summoned Uber's services to get home late at night. Had Uber implemented proper monitoring technology, Plaintiff could "have been spared the horrible incident from which she still suffers."[53]

In short, Uber, knowing full well that thousands of women choose Uber as their option to travel home at night because of Uber's representations of safety, also had a duty – which it undertook for its own commercial gain – to monitor the drivers, and to implement mechanisms to alert when drivers veered off route, for how long, etc. These are all actions that Uber could have taken, but affirmatively chose not to take. Again, had Uber implemented these safety mechanisms and monitored its drivers who – like in this case – went off route or stopped during a ride, Uber would have materially diminished the risk to Plaintiff, as well as the thousands of others who have

---

[50] *See* Colón Decl., Ex. A at ¶ 24-25.

[51] *See* Colón Decl., Ex. A at ¶ 47-48.

[52] *See* Colón Decl., Ex. A at ¶ 13.

[53] *Id.*

11

been sexually assaulted by Uber's drivers. The fact that Uber chose to do nothing and failed to take steps to protect its riders, including Plaintiff, from this foreseeable risk supports an inference of negligence.

Thus, Uber's failure to implement these safety features proximately caused Plaintiff's injury. Plaintiff has sufficiently alleged facts to show that Uber knew or had reason to believe that additional safety measures would have prevented the assault from occurring to its customers, including Plaintiff.[54]

The allegations in the Complaint, read in the light most favorable to Plaintiff as required at this stage, plausibly state a claim for negligence.

**B.      Plaintiff Pleaded Sufficient Facts To State A Claim For Negligent Infliction Of Emotional Distress Against Defendant Upon Which Relief Can Be Granted.**

A cause of action to recover damages for negligent infliction of emotional distress generally requires a plaintiff to show a breach of a duty owed to her which unreasonably endangered her physical safety, or caused her to fear for her own safety.[55] A plaintiff must show either that (1) she suffered an emotional injury resulting from Defendant's breach of a duty that unreasonably endangered his physical safety (the "direct duty" theory); or, (2) Defendants' negligence threatened her with physical harm, and as a result, he suffered emotional injury from witnessing the death or serious bodily injury of an immediate family member (the "bystander" theory).[56]

---

[54] *Id.*

[55] *See JG & PG ex rel. JGIII v. Card*, No. 08 CIV. 5668 (KMW), 2009 WL 2986640, at *9 (S.D.N.Y. Sept. 17, 2009).

[56] *Hiralall v. Sentosacare, LLC*, No. 13 CIV. 4437 (GBD), 2016 WL 1126530, at *15 (S.D.N.Y. Mar. 18, 2016), *citing Mortise v. U.S.*, 102 F.3d 693, 696 (2d Cir. 1996) ("'Under New York law, a plaintiff may establish [a claim for negligent infliction of emotional distress] in one of two ways: (1) the 'bystander' theory; or (2) the 'direct duty theory.'").

Defendants argue that Plaintiff's alleged emotional injuries arose from the intentionally tortious conduct of the Uber driver, and therefore, Plaintiff's claims must be dismissed. However, Plaintiff alleges that Plaintiff only sought Uber's services because Uber held itself out as the safest option for a ride home for persons in Plaintiff's position (*i.e.*, female and inebriated).  Uber's false representations – which specifically were intended to make Plaintiff feel comfortable using the Application – were the cause of Plaintiff using its service. Having touted the safety of its service, Uber's knowing failure to implement appropriate safety standards allowed for the sexual assault to occur. For these reasons, Plaintiff suffered immense physical, psychological, and emotional trauma. Giving the "benefit of every possible favorable inference … within any cognizable legal theory",[57] these claims are sufficient to state a claim upon which relief can be granted.

Therefore, Defendants motion to dismiss Plaintiff's negligence claim should be denied.

## C. Plaintiff Pleaded Sufficient Facts To State A Claim For Deceptive Trade Practices Against Defendant Upon Which Relief Can Be Granted.

For its Third Cause of Action, Plaintiff alleges Uber made material misrepresentations to riders, including Plaintiff, regarding the safety of its services, and that Plaintiff suffered and continues to suffer as a result of Uber's deception. New York General Business Law § 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." To establish a *prima facie* case under Section 349, plaintiffs must demonstrate that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has

---

[57] *Leon v. Martinez*, 84 N.Y.2d 83, 87–88 (1994).

been injured as a result."[58]  "[D]eceptive acts" are defined as acts that are "likely to mislead a reasonable consumer acting reasonably under the circumstances."[59]

The scope of Section 349 is notably broad in three important respects. First, contrary to Defendants' assertion, claims brought under Section 349 are not subject to the heightened pleading requirements set forth in Rule 9(b).[60]  Second, to state a claim under Section 349, plaintiffs need not allege they relied on defendants' misrepresentations.[61]  Third, plaintiffs need not plead defendants knew or should have known the alleged statements were false or misleading.[62]

In support of Plaintiff's claim for deceptive representation, Plaintiff references misleading statements on Defendant's website,[63] Uber's partnership with Mothers Against Drunk Driving and its "designated rider" campaign,[64] and its pop-up kiosk in Toronto to offer free rides to inebriated persons.[65] These campaigns convinced Plaintiff to rely on Uber for a ride home after celebrating with friends. Having been put on alert of its myriad safety issues with respect to women riders, Uber well knew of the high risk for sexual assault. Still, Uber continued to tout its safety measures despite its decision to engage in minimal oversight and safety precautions.  Thus, Plaintiff's

---

[58] *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) *citing Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir.2000); *citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995).

[59] *Id.*

[60] *Id.*, *citing Pelman ex rel. Pelman v. McDonald's Corp.,* 396 F.3d 508, 511 (2d Cir.2005).

[61] *Id.*, *citing Koch v. Acker, Merrall & Condit Co.,* 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452, 967 N.E.2d 675 (2012).

[62] *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013); *citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741.

[63] *See* Colón Decl., Ex. A at ¶ 15-16, 18.

[64] *See* Colón Decl., Ex. A at ¶ 17.

[65] *Id.*

14

complaint sufficiently pleads transaction causation as she claims he would not have chosen the

service but for Uber's misleading and dangerous safety promises.[66]

Notably, many of the same statements that are pleaded by the Plaintiffs in this case are the

same statements that were considered by United States District Court for the Northern District of

California in *L.A. Taxi Cooperative, Inc. v. Uber Technologies Inc.*, 114 F.Supp.3d 852, 860 (N.D.

Cal. 2015). Although that action involved allegations of false advertising under the Lanham Act,

Judge Jon Tigar considered the question of whether Uber's general statements about safety were

false. In denying Uber's motion to dismiss, Judge Tigar noted the following:

> A reasonable consumer reading these statements in the context of Uber's advertising campaign could conclude that an Uber ride is objectively and measurably safer than a ride provided by a taxi or other competitor service, i.e., it is statistically most likely to keep riders from harm. References to the "strictest safety standards" and explicit comparisons with competitor taxi services reinforce the impression that Uber's statements are grounded in fact.

As in that case, Uber's attempts here to avoid liability for its deceptive statements fail.[67]

Plaintiff relied upon these specific representations to make the determination that Uber was the

safest option to get home. Plaintiff has therefore properly pleaded its deceptive representation

claim.

---

[66] *See Gorne v. Uber Techs., Inc.*, No. C19-1138 RAJ-MLP, 2019 WL 5902352 (W.D. Wash. Oct. 21, 2019), *report and recommendation adopted*, No. C19-1138-RAJ, 2019 WL 5887383 (W.D. Wash. Nov. 12, 2019).

[67] Defendant relies on *Minzer v. Barga*, No. 151979/2019, 2020 WL 2621710 (N.Y. Sup. Ct. May 22, 2020) (attached to Defendant's Memorandum of Law in Support of Motion to Dismiss, ECF No. 11, as Exhibit E) in support of its argument that Plaintiff cannot state a claim for relief for negligent misrepresentation. In *Minzer*, the plaintiff was struck in the face by an Uber driver, and he brought various causes of action against Uber. Uber moved to dismiss several of the plaintiff's claims, including his negligent misrepresentation claim. As to this claim, the Supreme Court held that while the plaintiff established "transaction causation" (that but for Uber's representation of safety, he would not have ordered an Uber), he did not establish "loss causation" (that Uber's misrepresentations directly caused plaintiff's injury). This case is distinguishable because while, here, Plaintiff alleges that she would not have ordered an Uber but for its representations of safety (therefore satisfactorily pleading "transaction causation"), Plaintiff has also established "loss causation" by thoroughly alleging that had Uber implemented proper safety mechanisms, it would have prevented the foreseeable attack on Plaintiff. Moreover, the plaintiff in *Minzer* sought to appeal the opinion, but the case was discontinued upon a stipulation of the parties, which suggests possible settlement for the claims.

For these reasons, Uber's motion to dismiss Plaintiff's claim for deceptive trade practices should be denied.

**D.    Should This Court Find That Plaintiff Has Failed To Sufficiently Plead Her Claims, This Court Should Grant Plaintiff Leave To Amend Her Complaint.**

It is well established that a court "should freely give leave" to replead "when justice so requires."[68] The policy behind this rule is that "[l]iberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit."[69]  The decision to grant or deny leave to amend under Rule 15(a)(2) is within the trial court's discretion.[70]  The court may deny leave to amend for "good reason," which normally involves an analysis of the four factors articulated in *Foman v. Davis*:[71] undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party, none of which are present here.

Should the Court find that any of Plaintiff's claims require further factual detail, Plaintiff respectfully requests that leave to amend be allowed at this early stage in this litigation.

---

[68] *Shi Ming Chen v. Hunan Manor Enter., Inc.*, 437 F. Supp. 3d 361, 364 (S.D.N.Y. 2020). *See also* Fed. R. Civ. P. 15(a)(2).

[69] *Shi Ming Chen v. Hunan Manor Enter., Inc.*, 437 F. Supp. 3d 361, 364 (S.D.N.Y. 2020) *citing Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.*, 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990) (citing *Jenn-Air Prods. v. Penn Ventilator, Inc.*, 283 F. Supp. 591, 594 (E.D. Pa. 1968)).

[70] *Id.*, *citing Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971).

[71] 371 U.S. 178, 182, 83 S.Ct. 227 (1962).

16

## V.
## <u>CONCLUSION</u>

In sum, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety.

**Dated**: New York, New York
       November 13, 2020

Respectfully submitted,

*/s/ Claudia V. Colón García-Moliner*
Claudia V. Colón García-Moliner
William A. Brewer, III

**BREWER, ATTORNEYS &
COUNSELORS**
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849
cvm@brewerattorneys.com
wab@brewerattorneys.com

**ATTORNEYS FOR PLAINTIFF
JANE DOE**

17

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2020, I electronically filed the foregoing Memorandum of Law in Opposition to Defendant's Motion to Dismiss with the Clerk of the Court using the CM/ECF system which sent notification of the filing to all counsel of record.

/s/ Claudia V. Colón García-Moliner
Claudia V. Colón García-Moliner
William A. Brewer, III

**BREWER, ATTORNEYS &
COUNSELORS**
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849
cvm@brewerattorneys.com
wab@brewerattorneys.com

**ATTORNEYS FOR PLAINTIFF
JANE DOE**

1